In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-1990

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DAVID GARCIA-UGARTE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:10-cr-00441-1—**John F. Grady**, *Judge.*

ARGUED NOVEMBER 1, 2011—DECIDED JULY 27, 2012

Before BAUER, FLAUM and SYKES, *Circuit Judges.*

BAUER, *Circuit Judge.* A Grand Jury indicted defendant-appellant David Garcia-Ugarte on one count of illegal reentry into the United States in violation of 8 U.S.C. § 1326(a). He pleaded guilty and was sentenced by the district court to fifty-seven months in prison. This appeal followed. We affirm.

## I. BACKGROUND

In 1990, Garcia-Ugarte, a Mexican citizen, illegally entered the United States. Between 1994 and 2005, he was convicted of multiple crimes, including theft and drug offenses, and was deported from the United States twice. On June 29, 2009, the Circuit Court of Winnebago County, Illinois convicted Garcia-Ugarte of attempted aggravated kidnapping and sentenced him to four years in prison. While serving that sentence, he was discovered by immigration authorities during a routine check of prison inmates. On January 5, 2011, after being indicted by a federal Grand Jury, he pleaded guilty to illegal reentry without a plea agreement.

At sentencing, after a sixteen-level enhancement pursuant to United States Sentencing Guideline § 2L1.2(b)(1)(A), the district court correctly determined Garcia-Ugarte's offense level to be twenty-one and his criminal history category to be IV. United States Sentencing Commission, Guidelines Manual, § 2L1.2(b)(1)(A), Sentencing Table (Nov. 2011). The corresponding Sentencing Guideline range was fifty-seven to seventy-one months in prison. U.S.S.G., Sentencing Table (Nov. 2011).

## II. DISCUSSION

Garcia-Ugarte argues that the district court failed to address two of his main arguments: that he was deprived of the opportunity to argue for a concurrent sentence and should therefore be given credit for time already served on his attempted aggravated kidnapping con-

viction; and next, to avoid unwarranted sentencing disparities, a below-Guidelines sentence is appropriate to account for the lack of a fast-track program in the Northern District of Illinois. Finally, Garcia-Ugarte claims that the district court erred when it added a sixteen-level enhancement to its sentencing calculation. We will review each of these arguments in turn.

This court reviews sentencing decisions for reasonableness under an abuse-of-discretion standard. *United States v. Booker*, 543 U.S. 229, 264 (2005); *Gall v. United States*, 552 U.S. 38, 41 (2007). Within-Guidelines sentences are presumptively reasonable and will be reviewed with deference to the district court. *United States v. Hurn*, 496 F.3d 784, 790 (7th Cir. 2007) (citing *Rita v. United States*, 551 U.S. 338, 346-48 (2007)).

At sentencing, Garcia-Ugarte requested the court grant him credit for time already served in state prison. In support, he cited U.S.S.G. § 5G1.3(c) which states that an undischarged term of imprisonment may be imposed to run "concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." U.S.S.G. § 5G1.3(c). In other words, Garcia-Ugarte claims his time spent in a state penitentiary for attempted aggravated kidnapping should result in a lower sentence for his federal charge of illegal reentry. Additionally, Garcia-Ugarte contends that because federal immigration authorities delayed his prosecution, he was deprived of the opportunity to seek a federal sentence concurrent with his state sentence. A review of the record indicates otherwise.

The sentencing transcript clearly shows that the court heard arguments from both parties, that time was dedicated to a recollection of § 5G1.3(c), and that both the government and the court acknowledged the advisory nature of the Guidelines, including § 5G1.3(c). Garcia-Ugarte then reiterated his main point, claiming he had been precluded from making a concurrent sentencing argument because of the delay on the part of the federal authorities. The court responded:

> That raises the question of whether had you made that argument it would have been successful with this court, and let me give you my decision on that. The state sentence for attempted aggravated kidnapping is wholly different in kind from the offense of illegal reentry. They have nothing whatever in common. Concurrent sentences for these two disparate offenses would result in a free pass for the federal offense. So in no way would I reach the conclusion that justice requires or even permits concurrent sentences in this case. So I reject the argument of the defendant that I should give him credit for the fact that he was deprived of the opportunity to seek concurrent sentences.

It is well-settled that, absent any procedural error (such as improperly calculating the Guidelines, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, or failing to sufficiently explain the given sentence), we will look to see if the court abused its discretion to determine whether or not the sentence is reasonable. *United States v. Sandoval*, 668 F.3d 865,

868 (7th Cir. 2011) (citing *Gall*, 552 U.S. 38, 46 (2007); *Rita*, 551 U.S. 338, 363-65 (2007)). Finding no procedural error, we are satisfied that the district court sufficiently considered, adequately responded to, and reasonably rejected Garcia-Ugarte's request for credit for time served and we uphold the court's ruling on this matter.

Next, Garcia-Ugarte claims the district court failed to address his argument for a fast-track-type sentence. Citing the lack of a fast-track program in the Northern District of Illinois,[1] Garcia-Ugarte tried to persuade the court that this void should be given significant consideration and that an appropriate sentence should include a downward departure from the Guidelines. Garcia-Ugarte also argued that significant, unwarranted sentencing disparities exist between districts that have fast-track programs and those that do not; that had he been convicted and sentenced in a fast-track district, he would have received a lesser sentence. Garcia-Ugarte makes the same argument to this Court,

---

[1] Effective March 1, 2012, in response to an earlier memorandum issued by the Department of Justice dated January 30, 2012, the Northern District of Illinois implemented a fast-track program for illegal reentry cases. However, Garcia-Ugarte was prosecuted, convicted, sentenced, and had appealed and delivered oral arguments by November 1, 2011. For these reasons, he is not entitled to consideration for fast-track sentencing under the new policy. Given Garcia-Ugarte's extensive criminal history, it is highly unlikely he would prevail even if considered for the new policy on the merits.

further arguing that due to the lack of a fast-track program in the Northern District of Illinois, the district court falsely believed "[it] could [not] take [a fast-track] argument into consideration." We disagree, once again finding Garcia-Ugarte's claim to be contrary to evidence in the record.

It is indeed true that a sentencing court may consider the absence of a fast-track program, in conjunction with the other § 3553(a) factors when determining a proper sentence. *United States v. Reyes-Hernandez*, 624 F.3d 405, 417 (7th Cir. 2010). But, contrary to Garcia-Ugarte's claims, the sentencing transcript indicates that the court was aware of its authority regarding fast-track considerations. In its explanation for rejecting Garcia-Ugarte's argument, the court highlighted the significance of Garcia-Ugarte's criminal history and noted, "the fact that the defendant had a violent felony conviction would likely disqualify him from fast-track treatment even in a district that has such a program." The court continued, "I'm not saying that in certain cases it might not be appropriate to consider [the fast-track], but I don't consider this [case to be] one . . . in which [the defendant] should be given any credit for the fact that he's not in a fast-track district."

At the time of sentencing, fast-track programs were not available everywhere and even in districts that utilized them, such downward departures were not automatic; a defendant's criminal history would be an appropriate factor for the court to consider. *United States v. Lua-Guizar*, 656 F.3d 563, 568-69 (7th Cir. 2011). Here,

the record indicates that the court was also aware of its own authority to consider fast-track-type sentences as it saw fit. We find no error and uphold the lower court's ruling.

In Garcia-Ugarte's final argument, he challenges the sixteen-level enhancement imposed by the district court pursuant to U.S.S.G. § 2L1.2(b)(1)(A). Garcia-Ugarte claims that the sixteen-level enhancement was unwarranted because no weapon was involved in his previous conviction. While a firearms offense is listed as a possible factor under § 2L1.2(b)(1)(A), it is not necessary for the enhancement to apply. Subsection (i) however, calls for a sixteen-level enhancement "[i]f the defendant was previously deported, or unlawfully remained in the United States, after . . . a conviction for a felony that is a drug trafficking offense for which the sentence imposed exceeded 13 months[.]" U.S.S.G. § 2L1.2(b)(1)(A)(i). The record shows that in 2002, Garcia-Ugarte was convicted of possession with intent to distribute marijuana worth nearly $200,000 and for this, the defendant was sentenced to seven years in prison, placing him directly within the parameters of § 2L1.2(b)(1)(A) and qualifying him for such an enhancement. Moreover, as we have emphasized, sentences falling within the Guidelines are presumptively reasonable, *Rita*, 551 U.S. at 347. Garcia-Ugarte has failed to persuade us that such an enhancement was unreasonable or unwarranted. We reject Garcia-Ugarte's argument and uphold the sixteen-level enhancement.

### III.  CONCLUSION

For the reasons stated, we AFFIRM.