In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2650

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LUIS GIL-LOPEZ,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:12-cr-203 — **Rebecca R. Pallmeyer**, *Judge.*

ARGUED MARCH 31, 2016 — DECIDED JUNE 16, 2016

Before MANION and KANNE, *Circuit Judges*, and PEPPER,[*]
*District Judge*.

PEPPER, *District Judge*. Defendant-Appellant Luis Gil-
Lopez ("Gil-Lopez") is a native and citizen of Mexico. He en-
tered the United States in the late 1980s; in 2002, he was con-
victed of a felony offense in Idaho state court. As a result, in

---

[*] Hon. Pamela Pepper, Eastern District of Wisconsin, sitting by desig-
nation.

2004 he was removed pursuant to an order entered by the immigration court. Several years later, however, he returned to this country, was arrested, and was charged in federal court with being illegally present in the United States after having been convicted of a felony.

In the district court, Gil-Lopez entered a conditional guilty plea to the one-count indictment. Gil-Lopez's conditional guilty plea allowed him to pursue this appeal from the district court's order denying his motion to dismiss that indictment. Gil-Lopez argues that the district court erred in determining that his 2004 removal could form the basis for the current charge of unlawful reentry and that his prior conviction was for an aggravated felony, rendering him removable to Mexico. The government responds that Gil-Lopez cannot challenge the district court's decision, because he did not exhaust his administrative remedies with respect to the immigration court's 2004 removal order. We agree, and affirm.

## I. BACKGROUND

Gil-Lopez originally entered the United States in 1987. He became a lawful permanent resident in 2000. In 2002, in the Sixth Judicial District of Bannock County, Idaho, Gil-Lopez pleaded guilty to an amended information charging him with one count of violating Idaho Code §18-1501(1), "Injury to Children," after originally having been charged with two counts of forcible rape. Idaho Code §18-1501(1) provides:

> INJURY TO CHILDREN. (1) Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental

> suffering, or having the care or custody of any child, willfully causes or permits the person or health of such child to be injured, or willfully causes or permits such child to be placed in such situation that its person or health is endangered, is punishable by imprisonment in the county jail not exceeding one (1) year, or in the state prison for not less than one (1) year nor more than ten (10) years.

For that conviction, the Idaho court sentenced Gil-Lopez to a determinate term of three years' imprisonment, followed by an indeterminate term of seven years' imprisonment. The court subsequently reduced that sentence to a fixed term of eighteen months' imprisonment, followed by an indeterminate term of eight and one-half years' imprisonment.

In July 2004, the federal government initiated removal proceedings against Gil-Lopez in immigration court. The government alleged that Gil-Lopez was subject to removal because he had been convicted of an aggravated felony—a crime of violence—for which the term of imprisonment was at least one year. The government served Gil-Lopez with a "Notice To Appear," which informed him of the removal proceedings and the basis for the government's charge that he was subject to removal. That document contains a signature line for the respondent, and apparently it was executed by Gil-Lopez. (R. 91-3 at 2.)

In August 2004, the immigration court conducted a hearing in the removal proceedings. The attorney representing Gil-Lopez in immigration court filed a letter arguing that, in the case of *In re Troy Don Tinney* A28 499 154, (Sept. 19, 1996),

the Board of Immigration Appeals had determined that a conviction under Idaho's "injury to a child" statute was not an aggravated felony. The immigration court distinguished *Tinney* from Gil-Lopez's case, because *Tinney* involved criminal conduct by which an alien permitted a child to be injured, while the amended information alleged that Gil-Lopez "willfully inflicted unjustifiable physical pain or mental suffering" on the victim. On August 17, 2004, the immigration court ordered Gil-Lopez to be removed to Mexico, terminating his status as a lawful permanent resident.

Gil-Lopez initially reserved his right to appeal the removal order. The government then served Gil-Lopez with a "Warning to Alien Ordered Removed or Deported," which advised Gil-Lopez that he was prohibited from entering or attempting to enter the United States because he had been convicted of an aggravated felony and ordered to be deported. (R. 88-5.) That document contains signature lines for the alien/detainee and the officer serving the warning. On the line denoted for the officer's signature, the document contains a signature substantially similar to the Gil-Lopez signature on the Notice to Appear. On the line to be signed by the alien/detainee, the document contains a different signature.

In a "Withdrawal of Reserve of Appeal" letter dated August 19, 2004, however, Gil-Lopez withdrew his right to appeal the removal order. The withdrawal provides:

> I GIL-Lopez, Luis Miguel, A74 578 378, do hereby withdraw my right to reserve appeal of the IJ decision dated August 17, 2004. I make this withdrawal voluntarily and without reservations. Additionally, I have consulted with my

> legal counsel and we have made this decision
> jointly.

(R. 91-8 at 2.) Like the Notice to Appear and the Warning to
Alien, the withdrawal form contains a signature line for the
respondent. A signature that appears to belong to Gil-Lopez
appears on that line. The statement also was signed by two
witnesses. On August 19, 2004, Gil-Lopez's prior counsel
transmitted the withdrawal to the INS. Counsel's cover letter
confirmed that Gil-Lopez "[was] waiving his right to an ap-
peal," and further stated he "request[ed] that he be deported
as soon as possible." (Id. at 1.) Gil-Lopez did not appeal the
removal order, file a motion to reopen the immigration pro-
ceedings, or file a *habeas* petition. He was removed to Mexico
on or about August 24, 2004.

Gil-Lopez illegally reentered the United States sometime
before March 1, 2012, when he was arrested by immigration
authorities in Illinois. He was indicted in the Northern District
of Illinois on a charge of being illegally present in the United
States after having been removed, in violation of 8 U.S.C.
§1326(a). After unsuccessfully petitioning for *habeas* relief,
Gil-Lopez moved to dismiss the indictment, arguing that the
2004 removal proceedings were fundamentally unfair and vi-
olated his due process rights. Gil-Lopez argued that (1) his
underlying conviction could not serve as the predicate for ex-
pedited removal because it was not an aggravated felony, (2)
he was deprived of his constitutional right to meaningful re-
view of the immigration judge's decision because he was re-
moved two weeks before his time to appeal the immigration
judge's decision expired, (3) his counsel provided ineffective

assistance by failing to challenge the immigration court's decision, and (4) his waiver of his appellate rights was not knowing and voluntary.

Responding to Gil-Lopez's contentions, the government characterized Gil-Lopez's motion as an improper collateral attack on his 2004 removal proceedings. The government argued that (1) the district court should deny Gil-Lopez's motion because he had waived his right to appeal and did not move to reopen the removal proceedings or file a *habeas* petition, (2) he did not establish that he was deprived of the opportunity for judicial review, (3) his 2004 removal was not fundamentally unfair because his conviction was for a crime of violence (notwithstanding the decision in *Tinney*) or because that conviction fell within the definition of "child abuse," making him removable under 8 U.S.C. §1227(1)(2)(A)(iii), and (4) his claim of ineffective assistance was not supported by any evidence.

In an oral ruling following a hearing on the motion, the district court concluded that the immigration judge did not err in finding that Gil-Lopez's conviction of injury to a child was an aggravated felony, and denied his motion to dismiss the indictment. Gil-Lopez then pleaded guilty to the indictment under a plea agreement that preserved his right to appeal the issues that he raised in his motion to dismiss. This appeal followed.

## II. ANALYSIS

We review *de novo* the district court's denial of Gil-Lopez's motion to dismiss the indictment under 8 U.S.C. §1326(a). *United States v. Baptist*, 759 F.3d 690, 694 (7th Cir. 2014). We

may affirm the district court's judgment "on any basis identified in the record that was argued below." *United States v. Bokhari*, 757 F.3d 664, 673 (7th Cir. 2014) (quoting *Dye v. United States*, 360 F.3d 744, 750 (7th Cir. 2004)).

"Since a prior removal is necessary for a conviction under §1326, an alien may collaterally attack the underlying removal pursuant to the due process clause." *Baptist*, 759 F.3d at 694. In order to bring a collateral attack on the immigration court's prior removal order, Gil-Lopez must satisfy the elements of 8 U.S.C. §1326(d) by showing that: (1) he exhausted his administrative remedies; (2) the prior deportation proceedings improperly deprived him of an opportunity for judicial review; and (3) the entry of the removal order "was fundamentally unfair." *Id.* at 695 ("While we have yet to expressly state that all three requirements must be met before an alien can successfully collaterally attack a prior removal, we have implied as much.").

The district court's decision rested on its determination that Gil-Lopez's conviction under Idaho Code §18-1501(1) was an aggravated felony. The district court found that the statute is divisible, so the court could look to the underlying charging instrument to decide whether Gil-Lopez's crime constituted a crime of violence. In his initial brief before this court, Gil-Lopez focused primarily on the divisibility issue, though he conceded that if he "validly waived the right to appeal the deportation order" in his August 2004 Withdrawal of Reserve of Appeal letter, "then he is barred from challenging it here." (Appellant's Br. at 9.) The government had argued below, as it does in this appeal, that Gil-Lopez's waiver of appellate rights barred his challenge to the immigration court's

prior removal order, because he did not exhaust his administrative remedies following his conviction. In reply, Gil-Lopez argued that he did not knowingly sign a waiver of his appellate rights, but he did not cite any evidence showing that he did not sign the withdrawal.

At oral argument, we asked Gil-Lopez's counsel to identify the evidence supporting his contention that Gil-Lopez did not knowingly and voluntarily withdraw his appellate rights. Counsel answered with an argument he had raised below: that Gil-Lopez's former counsel—not Gil-Lopez himself—had signed the withdrawal. He argued that the signature on the withdrawal did not appear to be the same as the signature on the August 19, 2004 Warning to Alien Ordered Removed or Deported.

There is no evidence in the record—presented by affidavit, testimony, or other means—supporting Gil-Lopez's bare assertion that he did not sign the withdrawal, and his counsel's unsupported arguments are not evidence. *United States v. Diaz*, 533 F.3d 574, 578 (7th Cir. 2008). Because Gil-Lopez provided us with no evidence supporting his claim that he did not sign the withdrawal, we have no basis for concluding that Gil-Lopez did not sign the withdrawal knowingly and voluntarily.

The evidence before us compels the conclusion that Gil-Lopez waived his right to appeal and, as he conceded, he cannot challenge that order in this appeal because he did not exhaust his administrative remedies. Our resolution of the waiver issue in favor of the government is dispositive of Gil-Lopez's appeal, so we need not reach the substantive question of whether Gil-Lopez's prior conviction was an aggravated felony.

### III. Conclusion

Gil-Lopez waived his rights to appeal the immigration court's 2004 removal order. Consequently, he cannot establish that he exhausted his administrative remedies as required by §1326(d), and the district court properly denied his motion to dismiss the indictment.

AFFIRMED.